SEBASTIAN REICHART

*v.*

MICHAEL FELPS *et al.*

1. GOVERNOR'S CONFIRMATION — *of its effect.* The effect of a confirmation by the governor of the Northwest Territory under the resolutions and instructions of congress of June and August, 1788, is that the United States thereby declare, through their authorized agent, that they had no claim to the land respecting which the confirmation was made. Such confirmation is not a grant by the United

States, because the title to the lands affected thereby was not in them.   One of the objects of the acts of congress and instructions to the governor, was, to ascertain the public lands; to find out what portions of the domain ceded by Virginia passed by the cession; and that was ascertained by first establishing the claims of the settlers; the residuum only belonged to the government subject to be sold. The case of *Doe, &c.,* v. *Hill,* Breese, 236, cited and approved.

2.   Congress has no power to organize, years after the title and. possession were confirmed by the governor, a board of revision to nullify them.

3.   SAME — *of proofs required in support of the confirmation.*   The confirmees cannot be required, twenty years after they had made their proofs before the governor; and he had acted on them, to produce them again when relying upon the confirmation to defend their possession.

4.   SAME — *of the character of instrument by which the confirmation could be made.* It is of no importance whatever, whether the governor's act of confirmation assumed the form of a patent or of a deed under seal.   Under the acts of congress, giving this power to the governor, he was not required to issue a patent or execute a deed under seal.   Any written evidence, if it amounted to no more than an entry made by him in a memorandum book, of his act of confirmation, would be a sufficient execution of the power under the law.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLISPIE, Judge, presiding.

Sebastian Reichart commenced his action of ejectment in the court below, against Michael Felps and others, to recover the possession of certain lands lying in St. Clair county.   The plaintiff claimed title by virtue of two patents issued by the United States, one in 1838 and the other in 1853.   The defendants were in possession, claiming the premises through their ancestor, George Lunceford, who claimed the same by deed from Nicholas Jarrot, bearing date January 22, 1801.   Jarrot derived his title as assignee of Philip Engle, from a confirmation by Governor St. Clair to him, dated Feb. 12, 1799, as follows:

"Territory of the United States, northwest of the Ohio. *Arthur St. Clair,* governor of the territory of the United States northwest of the Ohio, to all persons who shall see these presents, greeting:

"KNOW YE, that in pursuance of the acts of congress of the 20th of June, and 28th of August, 1788, and the instructions to the governor of the said territory, of the 20th of August of the same year, the titles and possessions of the French and Canadian

inhabitants, and other settlers in the Illinois country, and at St. Vincennes, on the Wabash, the claims to which have been by them presented, have been duly examined into, and Nicholas Jarrot lays claim to a certain tract or parcel of land, lying and being in the county of St. Clair, and bounded in manner following, to wit (here the governor's confirmation sets out the boundaries), to which, for anything appearing to the contrary, he is rightfully entitled, as assignee of Philip Engel. Now, to the end that the said Nicholas Jarrot, his heirs and assigns, may be forever quieted in the same, I do, by virtue of the acts and instructions of congress, before mentioned, confirm unto Nicholas Jarrot, his heirs and assigns, the above described tract or parcel of land, lying and being in the county of St. Clair, and containing 778 acres and 131 perches, together with all and singular the appurtenances whatsoever, to the said described tract or parcel of land with the appurtenances, to him, the said Nicholas Jarrot, to have and to hold, to the only proper use of the said Nicholas Jarrot, his heirs and assigns, forever; saving, however, to all and every person, their rights to the same or any part thereof, in law or equity, prior to those on which the claim of the said Nicholas is founded.

"In testimony whereof, I have hereunto set my hand, and caused the seal of the territory to be affixed, at Cincinnati, in the county of Hamilton, on the 12th day of February, A. D. 1799, and of the Independence of the United States the 23d.

"ARTHUR ST. CLAIR.

"Registered: *Wm. H. Harrison*, secretary of the territory. Recorded 19th October, 1804."

The trial below resulted in a finding for the defendants. A motion for a new trial was overruled, and a judgment entered upon the finding, from which the defendants took this appeal.

The principal question arising upon the assignment of errors, is as to the effect of the governor's confirmation in determining the title to the land; and herein, whether the making of the instrument above set forth was a sufficient execution of the power vested in the governor in that regard.

Mr. W. H. UNDERWOOD, for the appellants.

This identical governor's confirmation was before this court thirty-five years ago, and was sustained as against a patent subsequently issued for a part of the land covered by it. See *Doe ex dem.* v. *Hill,* Beecher's Breese, 304, &c.

This decision was expressly recognized, approved and acquiesced in by the government of the United States, which refunded to said Hill's widow and heirs the purchase-money for the part of said land patented to Hill. See Laws of 1842, U. S. Statutes at Large, vol. 6, p. 860.

No seal was necessary to. the governor's confirmation. *Ward* v. *Bartholomew,* 6 Pick. 414; 2 Hill, 383, 3d edition.

Upon a survey of the claim of Jarrot under direction of the governor, the title *ex vi termini* became confirmed in the claimant. 12 Mass. 339; 12 Ill. 330–333; 12 How. U. S. 59.

Mr. GEORGE TRUMBULL, for the appellee.

The appellee's title is derived as follows:

1. By act of Virginia, December 20, 1783, authorizing by commissioners the conveyance of its lands northwest of the Ohio river to the United States (Real Estate Stat., p. 27), whereby it was enacted, "That the French and Canadian inhabitants and other settlers of the Kaskaskias, St. Vincent and the neighboring villages, who have professed themselves citizens of Virginia, shall have their possessions confirmed to them and be protected in their rights and liberties."

2. By deed of cession of Virginia to the United States, dated 1st March, 1784, which recites the foregoing act, and states the deed to be for the uses and purposes and on the conditions of said recited act. Id. p. 29; Pub. Land Laws, part 1, p. 585.

4. Report of Williamson *et al.,* a committee appointed by congress June 20, 1788, on the memorial of George Morgan *et al.* The committee say: "That the ancient settlers on the Mississippi river should be confirmed in the possession of such lands as they may have had at the beginning of the late revolution,

and which may have been allotted to them, according to the laws or usages of the governments under which they have respectively settled. Pub. Land Laws, part 1, p. 30. That measures be immediately taken for confirming in their possessions and titles the French and Canadian inhabitants and other settlers on those lands who, on or before the year 1783, had professed themselves citizens of the United States, or any of them. Id., p. 31. That whenever the French and Canadian inhabitants and other settlers as aforesaid shall have been confirmed in their possessions and titles, &c. (p. 31), they recommend laying off certain other tracts of land."

They further reported that the governor of the Northwestern Territory be instructed to repair to the French settlements on the Mississippi river, at and above the Kaskaskias; that he examine the titles and possessions of the settlers as above described, in order to determine what quantity of land they may severally claim, which should be laid off to them at their own expense, &c., upon which report it was resolved that congress agree to said report. Id. p. 33.

4. Arthur St. Clair, governor of said Territory, did afterwards examine into the titles and possessions of the settlers, and issued a patent to Nicholas Jarrot for the land in controversy, dated February 12, 1799, a copy of which appears in the abstract, and through which appellees claim title.

The first question to be considered is, was the title to this land ever in the United States? I contend that it was reserved by Virginia for the use of the inhabitants in its grant to the United States, and never passed to the United States. All that remained to be done was to locate the land reserved, and when that was done, the title was fixed in the persons designated in the act of the Virginia legislature and her deed of cession.

That the location of the land by Governor St. Clair confirmed the title to the same in Nicholas Jarrot, and such appears to have been the understanding of the government at the time.

Under the act of congress, March 26, 1804 (1st part of Public Land Laws, p. 129, § 5), persons claiming land by grant from the French or British governments, or by virtue of actual pos-

session and improvement, or for any other account, &c., were required, by the 1st November, 1804, to give notice of their claim, and have the evidence of the same recorded, and a failure to give such notice and have the claim recorded, made the claim void.

The treasury department, in their instructions of July 9, 1804, say: "Where grants have been made by the governor, it is absolutely necessary that the grant itself should be filed and recorded. It is unnecessary to file or record any other evidence of claim but the grant, for the governor's grant is in itself evidence of title," &c. Part 2 of Public Land Laws, 664.

Jarrot did present his grant, which was made a matter of record Oct. 19, 1804.

The land having been confirmed to Nicholas Jarrot, the United States could not divest the title by issuing a patent to another. *Harold* v. *Simonds*, 9 Miss. 326 ; *McGill* v. *Somers*, 15 Miss. 80.

The title may pass by resolve as well as by deed. 12 Mass. 339 ; 2 Hilld. on Real Estate, 225.

This title came before our Supreme Court, in case of *Doe, &c.*, v. *Hill.* The case is reported in Breese, 236, and the court, after examining all the acts and resolutions of congress in relation to said confirmation, held that the title to the land was in the plaintiff, who claimed under the confirmation to Nicholas Jarrot, and is decisive of the questions arising in this case. After the decision of the Supreme Court, the government, acting upon it as a settlement of the title under said grant, passed an act Aug. 11, 1842, refunding to the widow and heirs of Samuel Hill the consideration money paid by Samuel Hill to the United States. 6 U. S. Stat. at Large, Private Laws, 860.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of ejectment for certain lands lying in the county of St. Clair. The plaintiff and appellant claimed title by virtue of two patents issued by the United States, one in 1838 and the other in 1853. The defendants were in possession, claiming the premises through their ancestor George Lunceford, who claimed the same by deed from Nicholas Jarrot, bearing

date January 22, 1801. Jarrot derived his title as assignee of Philip Engle, from a confirmation by Governor St. Clair to him, dated February 12, 1799. The question for us to determine, is, what is the effect of the governer's confirmation of 1799?

The answer will be found in the very able and elaborate opinion of this court, pronounced more than thirty years ago, in this same case, by Justice Lockwood, and which received the concurrence of the bar and the country at the time it was delivered, and has never been, to our knowledge, called in question. The case in which the opinon was delivered was in name of *John Doe ex dem. of Moore and others, heirs-at-law of George Lunceford,* v. *Hill,* and reported in Breese's Reports, 304, 2d ed.

We do not perceive any fact in the present case which was not, in that case, calculated to produce a result different from the one there announced. It is true, in that case no objection was made that the patent from the governor wanted a seal. We do not consider it of any importance whatever, whether the governor's act of confirmation assumed the form of a patent or of a deed under seal. Under the acts of congress giving this power to the governor, he was not required to issue a patent or execute a deed under seal.

Any written evidence, if it amounted to no more than an entry made by him in a memorandum book, of his act of confirmation, would have been a sufficient execution of the power under the law. The governor, however, issued an instrument of writing to the confirmee in the form of a patent, containing words of confirmation with express reference to the acts of congress of 20th of June, and 28th of August, 1788. The effect of this writing is a declaration by the United States, through their authorized agent, that they had no claim to the land. It was not a grant by the United States, because the title was not in them. One of the objects of the acts of congress and instructions to the governor, was to ascertain the public lands, to find out what portion of the domain ceded by Virginia passed by the cession, and that was easily ascertained, by first establishing the claims of the settlers; the residuum only belonged to the government, subject to be held or otherwise disposed of by them.

The opinion in the case in Breese is so full and satisfactory on all the questions raised in this case, we are content to refer to that, and make it the basis of our opinion. We agree with the court that congress had no power to organize, years after those titles and possessions were confirmed by the governor, a board of revision to nullify them. Why should the confirmees be required, twenty years after they had made their proofs before the governor, and he had acted on them, to produce them again? In most cases it would be impossible, by reason of death, removal, or other casualties. Justice requires that his official written declaration that the government had no title to the land claimed, and acquiesced in by the government, should protect the confirmee and those claiming under him.

So well satisfied with the decision in this case which we have adopted was the congress of the United States, that an act was passed restoring to the purchasers from them the money they had paid for this land. The act will be found among the private acts passed August 15th, 1849, in vol. 6 of U. S. Statutes at Large. The judgment is affirmed.

*Judgment affirmed.*