THOMAS J. PAYNE

*v.*

JOHN MARKLE.

1. CONTRACT—*construed.* Where a grantor of land, after full payment of the purchase money, in consideration of the promise of the grantee to pay him a further sum, agreed to "show and present to" the grantee "a perfect chain

of title to said property from the United States government," within ninety days, but the agreement to pay to be void if the grantor should fail to procure and present such perfect chain of title, it was *held*, the words, "chain of title from the United States government," meant the successive links, each perfect in itself, to connect the grantee and invest in him the title of the government, and not merely a colorable title with possession and payment of taxes, sufficient to bar a recovery by an adverse claimant, under the Statute of Limitations.

2. FRENCH CLAIMS—*Governor's deed of confirmation passes the government title.* Where lands have been confirmed in a party by the Governor's deed of confirmation, pursuant to act of Congress, the United States, thereafter, has no interest therein which it can sell or patent to another, and a patent issued therefor to a third person passes no title.

3. LIMITATION—*color of title.* A patent from the United States for lands previously confirmed to another by the Governor of the Northwestern territory, under the act of Congress, while it passes no title, is good color of title under the Limitation law of 1839.

APPEAL from the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

Mr. H. C. TALBOTT, for the appellant.

Messrs. RICKERT &·WINKELMAN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant purchased of appellee certain real estate for $2500, which he paid at the time; and appellee, thereafter, on the 25th day of October, 1875, made and delivered to him a warranty deed therefor. On the same day, appellant's lawyers having expressed some doubts in regard to appellee's title, appellant proposed to appellee to give him $500, (in addition to the $2500 which he had already paid as the consideration for the deed to the land,) after the expiration of ninety days, if appellee would, within that time, show and present to him a perfect chain of title to the property from the United States government. The proposition was accepted by appellee, and thereupon the following instrument was made and delivered:

"This agreement, made this 25th day of October, 1875, by and between Thomas J. Payne, on the one part, and John Markle, of the other part, witnesseth, that, whereas, said Payne has this day purchased of said Markle his property in Harrisonville, being the one-acre lot and appurtenances purchased of W. W. Bamber, in claim No. 511 and survey No. 497, as described in said deed; and, whereas, the said John Markle hereby agrees to show and present to said Payne a perfect chain of title to said property from the United States government at any time within ninety days from this date: Now, therefore, the said Thomas J. Payne hereby agrees and binds himself to pay to said John Markle the sum of $500 upon such presentation within said ninety days; but it is expressly understood that said Payne is not bound to pay said $500 until after the said ninety days. But if the said Payne pays the said $500 at the end of said ninety days, he shall be entitled to a discount at the rate of ten per cent per annum; and in case of the failure by said Markle to procure and present such perfect chain of title, this agreement is to be null and void, and nothing further is to be paid on said land than the $2500, which is the consideration in said deed.

"In witness whereof, we have hereto set our hands and seals, the day and year first aforesaid.

"THOMAS J. PAYNE.    [SEAL.]
"JOHN MARKLE.    [SEAL.]

"Attest:   CHARLES HENCKLER."

Appellee, claiming to have complied with the terms of this instrument, brought an action of debt thereon to recover the sum stipulated to be paid.

Proper pleas were filed by appellant to present the defense which he relies upon, and the cause was submitted to a jury, under instructions from the court. The verdict was in favor of appellee, assessing his damages at $500. The court, after overruling a motion for a new trial, gave judgment upon the verdict.

The first, and principal question presented by the record is, what is meant by the language, "to show and present a perfect chain of title to said property from the United States government," as used in the instrument?

Appellee contends, and such, in effect, was the ruling of the court below, that it simply means, to produce evidence of a good, defensive title, and that the requirement is complied with by producing evidence of color of title and possession, and payment of taxes thereunder, which, under the Limitation act of 1839, would bar recovery by an adverse claimant.

This construction is not admissible. It is not the language employed by the parties. The language employed by the parties in the instrument, as plainly as it is possible to express the idea, requires the production of a chain of title from the United States government which shall be perfect. To our minds, it is too plain to admit of serious controversy this can only mean the production of the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title, down to and including the conveyance to appellant. Actual occupancy alone, adverse to all the world, for the period of twenty years, may amount to a good, defensive title; but it would seem to be too absurd to justify comment to suppose this to be a chain of title from the government of the United States. Chain of title from the government of the United States can only be construed as meaning the successive links which connect the claimant of title with and invest in him the title of the government. The language requires this chain, and, therefore, necessarily, the successive links shall be perfect. But color of title, as this court has repeatedly held, is not perfect title. Indeed, in our statutes and decisions, the word is always used to describe a conveyance purporting to convey real estate, which, in fact, because of some imperfection, does not do so—an apparently good, but actually imperfect, title.

When we resort to the circumstances which induced the execution of the instrument, it is equally plain the language

employed was not inapt to express the intention of the parties. Appellant had bought the land and paid for it, and received appellee's warranty deed. So far, therefore, as it was possible for appellee to convey and guaranty to him a good title, he had all that he needed; but his lawyers having doubts in regard to his title, he wanted not an additional title, but additional evidence of title—evidence which would remove all reasonable doubts—evidence of a perfect chain of title from the government. He was satisfied with the title he had, but was willing to pay $500 to get such evidence, so that, doubtless, in the future sale or disposition of the property, his title might not be subjected to cavil. There is no consideration to support the promise of payment of $500, other than this additional evidence of title. It is both contrary to the evidence given and to reason that he should have been willing to pay $500 more merely for evidence, (which he already was apprised of, and with which he was satisfied,) that by resorting to the Limitation laws he had a good title. He wanted evidence of a title which could not be reasonably questioned—which, in and of itself, without regard to extraneous circumstances, should show a perfect title—in other words, a perfect chain of title.

It is not claimed that the patent of this land to Caldwell Cairnes, by the government of the United States, was valid. The land had been previously confirmed in the heirs of John Ellison, by deed of confirmation of Gov. St. Clair, pursuant to act of Congress. The United States government had no interest in the land which it could sell or patent to Cairnes, as was settled in *Doe, ex dem. etc.* v. *Hill*, Breese, (Beecher's Ed.) 304; *Reichart* v. *Felps et al.* 33 Ill. 433; *Reichart* v. *Felps*, 6 Wallace, 160.

Appellee did not show that he had title derived by conveyance through the heirs of John Ellison, but his claim is based on the Cairnes patent. That the Cairnes patent may be resorted to, in connection with payment of taxes, etc., as color of title, under the Limitation law of 1839, we do not ques-

tion; and this, and this only, is the extent to which the ruling goes in the cases decided in this court, and in the Supreme Court of the United States, referred to by appellee's counsel. But the Cairnes patent being void as a conveyance, and colorable only, it is as impossible that it could be a link in a perfect chain of title, as that there can be a perfect chain with defective or missing links. It is simply a link in a colorable chain of title—nothing more—a chain for which appellant did not bargain. Without attending to other defects claimed in the evidence given of the chain of title, this is sufficient.

Appellee did not show and present to appellant a perfect chain of title to said property, from the government of the United States, at any time within ninety days from the date of the instrument.

The judgment is reversed.

*Judgment reversed.*